
**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEN NOVAK, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-0441 |
| v. | (JUDGE CAPUTO) |
| BOROUGH OF DICKSON CITY, ROBERT WILTSHIRE, ANTHONY GALLIS, WILLIAM BOTT, and PETER NOVAJOSKY, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 21). For the reasons set forth below, the Court will grant Defendants' motion in part and deny it in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Ken Novack was hired by the Borough of Dickson City ("Dickson City") in 1990. (Doc. 1, ¶ 1.) In July 2003, Plaintiff became the Chief Clerk for Dickson City. (Doc. 27, Ex. E at 30.) Plaintiff's position as Chief Clerk was covered by a Collective Bargaining Agreement. (Doc. 1, ¶ 9.)

Plaintiff submitted evidence that in January 2004, following an election for the Dickson City Borough Council ("Council"), a new majority on the Council was elected. (Doc. 1, ¶¶ 19, 26.) Plaintiff further submitted evidence that this majority included Defendants Wiltshire, Gallis, Novojasky, and Bott ("new majority"). (Doc. 1, ¶ 26; Doc.

1

25, ¶¶ 3-6.)  Within sixty days (60) of the election of the new majority, Plaintiff served two one-day suspension/layoffs, on January 16, 2004 and February 2, 2004.  (Doc. 1, ¶ 27; Doc. 22, Ex. KN-9.)  In addition, Plaintiff was given two weeks written notice on February 11, 2004, and was then permanently laid off/terminated on February 26, 2004.  (Doc. 1, ¶ 27; Doc. 22, Ex. KN-17.)  Defendants have submitted evidence that Plaintiff's suspensions/layoffs were due to a lack of work.  (Doc. 22, Ex. KN-9.)  Plaintiff contends that the suspensions/layoffs were due to his political patronage of the previous majority on the Council ("outgoing majority") and his open opposition to the new majority.  (Doc. 27, Ex. C at 79.)

In support of his contentions, Plaintiff submitted evidence that prior to the election, on February 18, 2003, Plaintiff's wife, Sophia Novack, submitted a letter to the editor of the Scranton Times regarding the political activities in Dickson City.  (Doc. 25, Ex. F.)  Defendants Wiltshire, Bott, and Gallis responded to Sophia Novack's letter and mentioned Plaintiff in their response.  The letter states in relevant part:

> . . .Apparently Sophia Novack would like for her husband to keep his job as borough manager.  He is a school director and Sophia Novack has a job at the school district. Her daughter was just hired as a policewoman in Dickson City borough. Seems like the family has a lot of local government jobs. Is Sophia Novack trying to save her husband's political appointment job? So much for "Never bite the hand that feeds you".

(Doc. 25, Ex. G; Doc. 22, ¶ 8.)  Further, Plaintiff submitted evidence that the Monday before the election, he ran an advertisement in the Scranton Times evidencing his support for the outgoing majority.  (Doc. 27, Ex. C at 79.)  Plaintiff also submitted evidence that he overheard Defendant Gallis discussing this advertisement, and that Defendant Novajosky admitted to seeing the advertisement.  (Doc. 27-4 at 83; Doc. 27,

2

Ex. E at 97.)  In addition, Plaintiff submitted evidence that after midnight on the night of the election a motorcade drove past the front of Plaintiff's home honking their horns. (Doc. 27, Ex. C at 80-81.)  Plaintiff further submitted evidence that he believes he saw Defendant Wiltshire's vehicle in the motorcade.  *Id.*

Following his permanent layoff/termination, Plaintiff filed a grievance pursuant to the Collective Bargaining Agreement.  (Doc. 22, ¶¶ 33-34, Ex. KN-10; Doc. 25, ¶ 28.)  The grievance was submitted to arbitration and, subsequently, decided in Plaintiff's favor. (Doc. 22, ¶ 34; Doc. 25, Ex. H.)  Plaintiff was awarded back pay and it was directed that Plaintiff be reinstated.  *Id.*

On April 4, 2005, Defendants filed a motion to dismiss Count IV of Plaintiff's complaint.  (Doc. 4.)  The Court granted Defendants' motion on May 27, 2005.  (Doc. 14.) Then, on January 20, 2006, Defendants filed the present motion for partial summary judgment on Counts I and II of Plaintiff's complaint.  (Doc. 21.)  This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1.     Procedural Due Process**

To establish a cause of action for a procedural due process violation, Plaintiff must first prove that a person acting under color of state law deprived him of a protected property interest; and second, he must show that the procedures available to him failed to provide him with due process of law. *See, Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

**a.     Protected Property Interest**

To have a property interest in a job, a person must have a legitimate entitlement to such continued employment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  State law determines whether such a property right exists. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).  Further, the Court of Appeals for the Third Circuit has held that a "for-cause" termination provision in an employment agreement may establish a protected property interest. *Linan-Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 932 (3d Cir. 1995).

Defendants argue that the law is not clearly established as to whether Plaintiff's suspension, rather than termination, infringed a protected property interest. In support of their argument Defendants cite *Gilbert v. Homar*, 520 U.S. 924 (1997), in which the United States Supreme Court stated:

> [W]e have not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured

> public employees short of termination.  Petitioners, however, do not contest this preliminary point, and so without deciding it we will, like the District Court, 'assum[e] that the suspension infringed a protected property interest,'. . .and turn at once to petitioners' contention that respondent received all the process he was due.

*Id.* at 929 (citations omitted).

Defendants fail, however, to recognize that the Court of Appeals for the Third Circuit has clearly stated that "under Pennsylvania law, suspensions, like dismissals are only proper when for just cause; therefore, appellants had a separate property interest in not being suspended." *Gniotek v. City of Philadelphia*, 808 F.2d 241, 243 n.5 (3d Cir. 1986).  The decision by the Supreme Court in *Gilbert* does not alter this precedent.  Accordingly, Plaintiff had a property interest in his continued employment protected by the Due Process Clause against interruption via suspension or termination, absent just cause.

### b.     Pre-Deprivation

Public employees who may be dismissed only for cause are entitled to a very limited hearing prior to termination, to be followed by a more comprehensive post-termination hearing.  *See, e.g., Gilbert*, 520 U.S. at 929 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).  Pre-deprivation process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. *See Loudermill*, 470 U.S. at 546.  Further, post-deprivation process alone may satisfy the requirements of the Due Process Clause if a state must act quickly or if pre-deprivation process would be impractical.  *Gilbert*, 520 U.S. at 930.  In the present case, however, Defendants have not alleged that

either situation existed at the time of Plaintiff's one-day suspensions/layoffs or his permanent layoff/termination.  Therefore, the Court must address whether Defendants' failure to provide pre-deprivation process was constitutionally permissible.

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court set forth the balancing test for determining whether the particular process accorded an individual is constitutionally sufficient.  The factors that must be weighed include:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  Finally, when determining what process is due, the length and finality of the deprivation must be considered.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1976).

### i. One-Day Suspensions/Layoffs

Defendants, first, argue that Plaintiff was not entitled to additional pre-deprivation process before Plaintiff's one-day suspensions/layoffs on January 16, 2004, and February 2, 2004.  Defendants have submitted evidence that these suspensions/layoffs were due to a lack of work.  (Doc. 22, Ex. KN-9.)  Plaintiff contends that the suspension were due to his political patronage and has submitted evidence that even if the one-day suspensions/layoffs were due to lack of work, employees with less seniority than Plaintiff should have been laid off prior to Plaintiff according to the Collective Bargaining

7

Agreement. (Doc. 27, Ex. A.) Further, Plaintiff submitted evidence that he filed a grievance concerning these one-day suspensions/layoffs, which was subsequently decided in his favor. (Doc. 27, Ex. A.)

Weighing the *Eldridge* factors and considering the length and finality of the deprivation, I find that additional pre-deprivation process was not constitutionally required prior to the two one-day suspensions/layoffs at issue in the present case. Particularly, the one-day suspensions/layoffs were short in duration and temporary. Further, the fiscal and administrative burdens that additional procedural requirements would entail appear to outweigh the private interest affected by such a short deprivation. Finally, I find it pertinent that the Collective Bargaining Agreement in the present case provided Plaintiff with a post-deprivation process and remedy. For these reasons, I will grant Defendants' motion with regard to Plaintiff's pre-deprivation due process claims regarding his one-day suspensions/layoffs.

### ii. Permanent Layoff/Termination

Defendants, next, argue that Plaintiff was not entitled to additional pre-deprivation process before Plaintiff's permanent layoff/termination on February 26, 2004. Particularly, Defendants submitted evidence that Plaintiff was provided with two weeks advance notice of his layoff/termination. (Doc. 22, Ex. A at 79-80, Ex. KN-12.) For the following reasons, I find that Defendants have failed to demonstrate that such notice is constitutionally sufficient.

Unlike with the one-day suspensions/layoffs, Plaintiff's permanent layoff/termination is of considerable length and finality. *See Logan*, 455 U.S. at 434.

Further, balancing the *Eldridge* factors, Plaintiff should have been accorded the minimal pre-deprivation process of notice and an opportunity to be heard. *See Loudermill*, 470 U.S. at 552. Although Defendants have submitted evidence that Plaintiff was provided with notice, they have failed to submit evidence demonstrating that Plaintiff was accorded an opportunity to "tell his side of the story." *See id.* at 546. As such, I will deny Defendants' motion for summary judgment with respect to Plaintiff's pre-deprivation due process claims regarding his permanent layoff/termination.

        **c.**      **Post-layoff/Termination**

The Third Circuit Court of Appeals has repeatedly held that, "in cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements.'" *Leneny v. City of Pittsburgh,* 183 F.3d 220, 228 (3d Cir. 1999) (quoting *Dykes v. Southeastern Pa. Trans. Auth.,* 68 F.3d 1564, 1571 (3d Cir. 1995)).

In the present case, Plaintiff's employment was covered by a Collective Bargaining Agreement that included grievance and arbitration procedures. (Doc. 1, ¶ 9.) Further, Plaintiff filed a grievance via those procedures challenging his layoff/termination, which was subsequently decided in his favor. (Doc. 22, ¶¶ 33-34; Doc. 25, ¶ 28.) Given these undisputed facts, Plaintiff was provided with adequate post-layoff/termination due process. As such, I will grant Defendants' motion for summary judgment with regard to this claim.

**2.**      **First Amendment Retaliation Claim: Freedom of Speech**

To determine whether a public employee's speech is entitled to First Amendment

protection, a three-step test derived from the Supreme Court's decisions in *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Educatiuon*, 391 U.S. 563 (1968) must be applied. *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005). First, Plaintiff's speech must address a matter of public concern. *Id.* (citing *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001); *Connick*, 461 U.S. at 147. Second, if the speech does address a matter of public concern, then the *Pickering* balancing test must be used to determine whether an employee's interest in the speech outweighs the state's countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption. *Id.* (citing *Pickering*, 391 U.S. at 568). Third, Plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Id.* However, a public employer can rebut an employee's claim of retaliation by demonstrating that it would have reached the same decision, even in the absence of the protected conduct. *Id.* The first and second steps are questions of law for the court, whereas the final inquiry presents a question of fact for the jury. *Id.*

In the present case, Plaintiff asserts that he engaged in protected First Amendment activities when he placed a political advertisement in the newspaper in support of the outgoing majority, and when he spoke regarding his position with respect to the building of a golf course. Defendants argue that the record is devoid of evidence that demonstrates that these protected activities were a substantial or motivating factor in each Defendant's participation in Plaintiff's layoff/termination.

    a.    **Substantial or Motivating Factor**

Plaintiff's burden upon summary judgment is to come forward with enough

evidence to create a triable issue that his protected activity was a substantial or motivating factor in the alleged retaliation.  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  For the following reasons, I find that Plaintiff has sustained his burden with regard to each Defendant.

> **i.    Wiltshire, Gallis, and Bott**

Plaintiff submitted evidence that his wife, Sophia Novack, wrote a letter to the editor of the Scranton Times concerning the political activities occurring in Dickson City. (Doc. 25, Ex. F.)  Plaintiff further submitted evidence that Defendants Wiltshire, Bott, and Gallis responded to Sophia Novack's letter and mentioned Plaintiff in their response.  The letter states in relevant part:

> . . .Apparently Sophia Novack would like for her husband to keep his job as borough manager.  He is a school director and Sophia Novack has a job at the school district. Her daughter was just hired as a policewoman in Dickson City borough. Seems like the family has a lot of local government jobs. Is Sophia Novack trying to save her husband's political appointment job? So much for "Never bite the hand that feeds you".

(Doc. 25, Ex. G.)

In addition, Plaintiff submitted evidence that after midnight on the night of the election a motorcade drove past the front of Plaintiff's home honking their horns.  (Doc. 27, Ex. C at 80-81.)  Plaintiff further submitted evidence that he believes he saw Defendant Wiltshire's vehicle in the motorcade.  *Id.*

Furthermore, with regard to Defendant Gallis, Plaintiff also submitted evidence that Plaintiff overheard Defendant Gallis discussing an advertisement that Plaintiff had placed in the Scranton Times the Monday before the election, in which Plaintiff evidenced his

11

support for the outgoing majority. (Doc. 25, ¶ 18; Doc. 27, Ex. C at 79; Doc. 27-4 at 83.)

Finally, in addition to the above, Plaintiff has also submitted evidence of temporal proximity between his protected activities and Defendants' decisions to layoff/terminate Plaintiff.  Particularly, Plaintiff submitted evidence that the new majority took office in January 2004, and within sixty (60) days, Plaintiff was suspended/laid off twice and then permanently laid off/terminated on February 26, 2004.  (Doc. 1, ¶¶ 26, 27; Doc. 27, Ex. C at 78)

### ii. Novajosky

In addition to the temporal proximity of Plaintiff's protected activities to Defendant's decision to layoff/terminate Plaintiff, Plaintiff submitted evidence that Defendant Novajosky admitted he had seen the article Plaintiff placed in the Scranton Times supporting the outgoing majority.  (Doc. 27, Ex. E at 97.)  Further, Plaintiff submitted evidence that Defendant Novajosky admitted that he was aware that Plaintiff supported the outgoing majority. (Doc. 27, Ex. E at 96-97.)

As such, Plaintiff has fulfilled his burden of demonstrating evidence sufficient to create a triable issue that his protected activity was a substantial or motivating factor in Defendants' alleged retaliation.  *See Doyle*, 429 U.S. at 287.  The evidence presented, if believed, is sufficient for a reasonable jury to determine that Plaintiff's protected activities were a substantial or motivating factor in Defendants' decision to layoff/terminate Plaintiff. Therefore, Defendants' motion will be denied with respect to Plaintiff's First Amendment claims.

**3.      Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity from Plaintiff's remaining claims because the relevant law was not clearly established. I disagree.

The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001). To determine whether a particular defendant is entitled to the protections of qualified immunity, the Court must first determine whether a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Then, the Court must determine if the constitutional right at issue was clearly established at the time of the alleged violation. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Id.*, at 202. Qualified immunity is an objective question to be decided by the Court as a matter of law. *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).

In the present case, Plaintiff's due process and first amendment rights at issue in Plaintiff's remaining claims were clearly established. Therefore, I will deny Defendants' motion with regard to their claim for qualified immunity.

## CONCLUSION

Plaintiff had a property interest in his continued employment protected by the Due

13

Process Clause against interruption by suspension or termination, absent just cause. As such, Plaintiff was entitled to a very limited hearing prior to his layoff/termination, to be followed by a more comprehensive post-termination hearing. *See, e.g., Gilbert*, 520 U.S. at 929 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).

Weighing the *Eldridge* factors and considering the length and finality of the deprivation, I find that additional pre-deprivation process was not constitutionally required prior to the two one-day suspensions/layoffs at issue. Therefore, I will grant Defendants' motion with regard to Plaintiff's pre-deprivation due process claims regarding his one-day suspensions/layoffs. Unlike with the one-day suspensions/layoffs, however, Plaintiff's permanent layoff/termination is of considerable length and finality. Further, balancing the *Eldridge* factors, Plaintiff should have been accorded the minimal pre-deprivation process of notice and an opportunity to be heard. Defendants have failed to submit evidence demonstrating that Plaintiff was accorded an opportunity to "tell his side of the story" prior to his layoff/termination. As such, I will deny Defendants' motion for summary judgment with respect to Plaintiff's pre-deprivation due process claims regarding his permanent layoff/termination. In addition, Plaintiff's employment was covered by a Collective Bargaining Agreement that included grievance and arbitration procedures. Further, Plaintiff filed a grievance via those procedures challenging his layoff/termination, which was subsequently decided in his favor. As such, Plaintiff was provided with adequate post-layoff/termination due process. Therefore, I will grant Defendants' motion for summary judgment with regard to this claim.

Next, Defendants argue that the record is devoid of evidence that demonstrates that Plaintiff's protected First Amendment activities were a substantial or motivating factor


in each individual Defendant's participation in Plaintiff's layoff/termination. I find, however, that Plaintiff has submitted enough evidence to create a triable issue as to whether his protected activity was a substantial or motivating factor in the alleged retaliation. Therefore, I will deny Defendants' motion with regard to Plaintiff's First Amendment claims.

Finally, Defendants are not entitled to qualified immunity from Plaintiff's remaining claims. As such, Plaintiff's pre-deprivation due process claims regarding his permanent layoff/termination; his First Amendment retaliation claims concerning his protected speech; and his First Amendment retaliation claims concerning his freedom of association will remain.

An appropriate Order will follow.

 April 17, 2006                       /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KEN NOVAK,

    Plaintiff,

        v.

BOROUGH OF DICKSON CITY, et al.,

    Defendants.

CIVIL ACTION NO. 3:05-CV-0441

(JUDGE CAPUTO)

**ORDER**

**NOW**, this ___17th___ day of April, 2006, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 21) is **GRANTED in part** and **DENIED in part**:

(1) Defendant's motion is **GRANTED** insofar as it seeks summary judgment with respect to:

    (a) Plaintiff's pre-deprivation due process claims regarding his one-day suspensions/layoffs; and

    (b) Plaintiff's post-layoff/termination due process claims;

(2) Defendant's motion is **DENIED** with respect to:

    (a) Plaintiff's pre-deprivation due process claims regarding his permanent layoff/termination;

    (b) Plaintiff's First Amendment retaliation claims; and

    (c) Qualified Immunity from Plaintiff's remaining claims.

                                  /s/ A. Richard Caputo
                                  A. Richard Caputo
                                  United States District Judge